### 1802

SITEFINDERS, INC., Respondent v. Edward R. OPPEL; The Oppel Company; The Oppel Company of Tega Cay, Inc.; Old Court Investment Corporation; Old Court Savings & Loan Association; Tega Cay Development Company, Inc., and TC X Inc., of which Old Court Savings & Loan Association and Old Court Investment Corporation are Appellants. Appeal of OLD COURT SAVINGS & LOAN ASSOCIATION and Old Court Investment Corporation.

(417 S.E. (2d) 620)

Court of Appeals

*T. Hugh Simrill, Jr.*, Rock Hill and *Roy H. Michaux, Jr.*, of *Perry, Patrick, Farmer & Michaux*, Charlotte, N.C., *for appellants.*

*J. Edward Bell, III*, of *Bell & Bagley*, Sumter, *for respondent.*

Heard March 9, 1992.

Decided April 6, 1992.

LITTLEJOHN, Acting Judge:

Respondent Sitefinders, Inc., brought this action for breach of contract, among other things, against Edward R. Oppel, The Oppel Company, The Oppel Company of Tega Cay, Inc., Old Court Investment Corporation, Old Court Savings and Loan Association, Tega Cay Development Company, Inc., and TC X, Inc. At the close of the evidence, Sitefinders settled with Edward R. Oppel, The Oppel Company, and The Oppel Company of Tega Cay, Inc. The jury returned a verdict against Appellants Old Court Investment Corporation and Old Court Savings and Loan Association[1] on the breach of contract claim. Old Court appeals the trial court's denial of its motions for a directed verdict, for a judgment notwithstanding the verdict, and for a new trial. We affirm.

## FACTS

Edward R. Oppel and Old Court were the owners of Tega Cay Development Company (TCDC). TCDC owned some undeveloped land in Tega Cay, South Carolina. To enable him to buy Old Court's share of TCDC and to develop the land at Tega Cay, Oppel decided to apply for an FHA Title X loan guarantee from the Department of Housing and Urban Development (HUD).

On August 6, 1986, Oppel enlisted the services of Eleanore Clarage, a housing consultant with Sitefinders, to help him obtain the Title X guarantee. Oppel, as "[a]gent for a partnership to be formed," agreed to pay Sitefinders 2% of any guaranteed loan amount obtained through Sitefinders' efforts.

Thereafter, Clarage prepared a Site Analysis and Market Analysis (SAMA) application. By the time the SAMA application was completed, Clarage had finished approximately 95% of the work necessary to procure a guarantee. In response to the SAMA application, HUD issued a letter, dated March 27, 1987, inviting Oppel to submit an application for a firm commitment for mortgage insurance.

---

[1] For purposes of this case Old Court Investment Corporation and Old Court Savings and Loan Association have agreed to be considered as one and the same.

By a written agreement dated June 2, 1987, Oppel assigned to TCDC all his rights in the Title X application. He also gave TCDC the right to use consultants he had hired. On June 11, 1987, David Ruggieri, a real estate consultant who was handling the Tega Cay project for Old Court, told Clarage to continue pursuing the Title X guarantee and she did so. Ruggieri had a copy of the agreement between Oppel and Clarage.

On August 10, 1987, Old Court hired First Union Mortgage Corporation to assist it in obtaining the Title X guarantee. Ruggieri then sent Clarage a letter, written on Old Court letterhead and dated August 17, 1987, terminating Sitefinders' employment and informing her the Title X application was "unacceptable to TCDC as submitted and as approved for SAMA at [that] time." Prior to sending the termination letter, Ruggieri had neither told Clarage her work was unacceptable nor asked her to modify the application.

On August 17, 1987, the date of the termination letter, Clarage was within two or three weeks of submitting a firm commitment application. Ruggieri testified that if Sitefinders had not been terminated and had procured a Title X guarantee, it would have been paid 2% of the guaranteed loan amount.

Eventually, HUD issued a firm commitment for a Title X mortgage guarantee on the Tega Cay project. First Union charged a fee of 1.25% of the guaranteed loan amount for procuring the guarantee.

In obtaining the Title X guarantee, First Union benefitted from the work Clarage had already done. In fact, First Union charged less than Sitefinders to procure the guarantee partly because Clarage had already gotten the project through the SAMA stage. Although Old Court did make some changes in the project after Clarage was fired, she testified that she could have easily incorporated the changes into her proposal.

## LAW/ANALYSIS

In determining whether the trial court erred in denying Old Court's motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial, we must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to Sitefinders, the nonmoving party. *Woods v. Rabon*, 295 S.C. 343, 368 S.E. (2d) 471 (Ct.

App. 1988). Our review is limited to determining whether there is any evidence to support the verdict. *Id.*

As recited above, ample evidence supports a determination that Old Court entered into a contract with Sitefinders. *See Timmons v. McCutcheon*, 284 S.C. 4, 324 S.E. (2d) 319 (Ct. App. 1984) (a contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct). In particular, we note Old Court's termination of Sitefinders is evidence of a contract between Old Court and Sitefinders. If there were no contract, there need to be no termination.

Ample evidence also supports the jury's finding that Old Court breached the contract. *See General Sprinkler Corporation v. Loris Industrial Developers, Inc.*, 271 F. Supp. 551 (D.S.C. 1967) (the defendant's unwarranted termination of a contract requiring the plaintiff to install a sprinkler system in the defendant's building, and the defendant's entering into a new contract with another sprinkler contractor constituted a wrongful and unwarranted breach on its part); *cf. Gaylen Machinery Corporation v. Pitman-Moore Company*, 273 F. (2d) 340 (2d Cir. 1959) (where a principal promised to pay a commission to its agent if the agent obtained an order for vaccine from the Argentine Government and the principal terminated the agent before the order was obtained, the agent was entitled to his commission because it could be inferred from the evidence that the principal revoked the agency to avoid payment of the commission and that the order was later obtained as a result of the agent's work); Restatement (Second) of Agency § 454 (1957) ("An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as the result of the agent's prior efforts.").

For reasons stated hereinabove, the trial court did not err in refusing to grant Old Court's motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial. Accordingly, we affirm.

Affirmed.

SANDERS, C.J., and SHAW, J., concur.